# United States District Court
### NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| LOU LIGGINS | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:20-CV-0654-S |
| | § | |
| CITY OF DUNCANVILLE, TEXAS and | § | |
| NATHAN ROACH | § | |

## MEMORANDUM OPINION AND ORDER

This Memorandum Opinion and Order addresses Defendants' Second Motion and Brief to Dismiss ("Motion to Dismiss") [ECF No. 27]. For the following reasons, the Court **GRANTS** the Motion to Dismiss.

## I.     BACKGROUND

This case is a 42 U.S.C. § 1983 action arising from the shooting of Plaintiff Lou Liggins ("Plaintiff") by a Duncanville police officer responding to an emergency call. Plaintiff has a history of mental illness. *See* Pl.'s Second Am. Compl. ("Compl.") [ECF No. 25] ¶¶ 14-15. After he stopped taking medication, Plaintiff experienced a severe mental health episode on March 20, 2018, including suicidal ideation. *Id.* Plaintiff's mother, Mary Brown, called Plaintiff's health care providers to request emergency assistance, but was advised to call 911. *Id.* ¶ 16. Shortly thereafter, Mary Brown contacted the Duncanville Police Department ("DPD"), informing them that her son was having a mental health episode, but that he was not armed or dangerous. *Id.* ¶ 17. Mary Brown also told DPD that there were no firearms in the house. *Id.* ¶ 18. According to Plaintiff, this information was communicated to the officers arriving on the scene, including Defendant Officer Nathan Roach ("Officer Roach") and Defendant Robert Brown, the Duncanville Chief of Police ("Chief Brown"). *Id.* ¶ 19. Chief Brown allegedly assured Mary Brown repeatedly that DPD would not shoot Plaintiff and a negotiating team would be sent to the home. *Id.* ¶ 20.

Despite assurances from Chief Brown, Plaintiff claims that no negotiator, certified mental health peace officer, or other mental health professional contacted Plaintiff. *Id.* ¶ 22. Instead, Plaintiff maintains that officers entered the home with guns drawn. *Id.* ¶ 21. Plaintiff does not contend, however, that the entry was done forcefully or without permission. At the time officers entered the home, Plaintiff states that he did not display aggressive behavior. *See id.* ¶ 28. After officers arrived, Plaintiff allegedly attempted to retrieve his cell phone from his pocket. *See id.* ¶ 29. As he did so, and allegedly without warning, Officer Roach shot Plaintiff in the abdomen. *Id.* ¶¶ 30, 32. Immediately after the shooting, Plaintiff alleges that another police officer screamed at Officer Roach, "*What the hell are you doing*?!" *Id.* ¶ 31. Plaintiff was transferred to Methodist Health System where he underwent emergency surgery. *Id.* ¶ 32. Plaintiff claims that because of the gunshot wound, he suffers from lasting pain and physical limitations.[1] *Id.* ¶ 33.

Based on these allegations, Plaintiff filed a complaint on March 17, 2018, bringing claims against the City of Duncanville, Texas ("City") and "John Doe," the officer who shot Plaintiff and was unidentified at that time. *See* Pl.'s Compl. ("Original Complaint") [ECF No. 1]. On April 9, 2020, Plaintiff, the City, and Officer Roach stipulated that Plaintiff would amend his Original Complaint to substitute Officer Roach in place of "John Doe." Stipulation as to Amendment & Responsive Pleadings ("Stipulation") [ECF No. 10]. Plaintiff filed an amended complaint on April 17, 2020, naming Officer Roach as a defendant for the first time. Pl.'s Am. Compl. ("Amended Complaint") [ECF No. 11]. After obtaining leave of Court, Plaintiff filed the Second Amended Complaint, which is the live complaint before the Court. Electronic Order [ECF No. 21].

---

[1] It is unclear whether Plaintiff's gunshot wound was fatal. On the one hand, the Second Amended Complaint states that the City's failure to train Officer Roach resulted in Plaintiff's death. Compl. ¶ 6. On the other hand, the Second Amended Complaint states that Plaintiff "has lasting pain and physical limitations," implying that Plaintiff is still alive. *Id.* ¶ 33. Because there is no indication that Plaintiff's estate, as opposed to Plaintiff himself, brings this action, the Court assumes Plaintiff is living.

In the Second Amended Complaint, Plaintiff alleges claims against the City and Officer Roach (collectively, "Defendants") under 42 U.S.C. § 1983 and Texas state law. Specifically, Plaintiff asserts the following causes of action: (1) excessive force against Officer Roach; (2) municipal liability against the City; and (3) assault and battery against Officer Roach. Compl. ¶¶ 37-63. Defendants argue that Plaintiff's claims fail for several reasons. First, Defendants contend that the statute of limitations bars Plaintiff's claims against Officer Roach. Defs.' Second Mot. & Br. to Dismiss ("Motion to Dismiss") [ECF No. 27] 17-18. Second, even if Plaintiff's claims are not time-barred, Defendants assert that Officer Roach is entitled to qualified immunity. *Id.* at 9-15. Third, Defendants argue that Plaintiff's claims against the City fail because Plaintiff does not establish a constitutional violation caused by the City's official policy. *Id.* at 8-9. The Motion to Dismiss is ripe and pending before the Court.[2]

## II.   LEGAL STANDARDS

### A.   *12(b)(6)*

To defeat a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility does not require probability, but a plaintiff must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.* The court must accept well-pleaded facts as true and view them in the light most

---

[2] Defendants filed a prior motion to dismiss, Defs.' Mot. & Br. to Dismiss [ECF No. 13], which was denied as moot when Plaintiff filed his Second Amended Complaint, Electronic Order [ECF No. 26]. Thus, this is the first time that the Court has substantively considered Plaintiff's claims.

favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007). However, the court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (citation omitted). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

The ultimate question is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002). At the motion to dismiss stage, the court does not evaluate the plaintiff's likelihood of success. It only determines whether the plaintiff has stated a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977).

### B.     *42 U.S.C. § 1983*

To state a 42 U.S.C. § 1983 claim, Plaintiff must: (1) allege a violation of rights secured by the Constitution or laws of the United States; and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *Leffall v. Dall. Indep. Sch. Dist.*, 28 F.3d 521, 525 (5th Cir. 1994) (citations omitted). To ascribe liability to the City, Plaintiff must also allege that the City's official policy or custom "was a cause in fact of the deprivation of rights inflicted." *Id.* (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978)). The City "may not be held liable under § 1983 under a theory of *respondeat superior*." *Id.* (citations omitted).

### III.     ANALYSIS

#### A.     *Statute of Limitations*

The statute of limitations for a suit brought under 42 U.S.C. § 1983 is determined by the general statute of limitations governing personal injuries in the forum state. *Piotrowski v. City of Hous.*, 237 F.3d 567, 576 (5th Cir. 2001) (citation omitted). In Texas, the statute of limitations for personal injury claims, including assault and battery, is two years. *Id.* (Texas has a two-year statute of limitations for personal injury actions); *Kopecki v. City of Corpus Christi*, Civil Action No. C-06-513, 2007 WL 320975, at *3 (S.D. Tex. Jan. 30, 2007) (assault and battery is subject to a two-year statute of limitations pursuant to the personal injury statute) (citation omitted). Therefore, both Plaintiff's excessive force claim, brought under § 1983, and assault and battery claim, brought under Texas state law, are subject to a two-year statute of limitations. However, "the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law." *Hernandez v. Thomson*, 464 F. App'x 221, 222 (5th Cir. 2010) (quoting *Wallace v. Kato*, 549 U.S. 384, 388 (2007)) (emphasis in original). Under federal law, the accrual date for a § 1983 cause of action occurs on the date "the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." *Helton v. Clements*, 832 F.2d 332, 335 (5th Cir. 1987) (citations omitted). Under Texas law, the accrual date for assault and battery occurs on the date a wrongful act causes a legal injury. *Kopecki*, 2007 WL 320975, at *4 (citations omitted).

The parties do not dispute that: (1) Plaintiff's causes of action accrued on March 20, 2018, the date he was shot; (2) Plaintiff's claims against Officer Roach are governed by a two-year statute of limitations; (3) Plaintiff filed his Original Complaint on March 17, 2020—three days before the limitations period would have expired on March 20, 2020; (4) Plaintiff's Original Complaint did not list Officer Roach as a defendant, but instead identified the officer who shot Plaintiff as "John

Doe;" (5) Plaintiff and Defendants stipulated on April 9, 2020, that Plaintiff would amend the Original Complaint to substitute Officer Roach for "John Doe;" and (6) Plaintiff filed the Amended Complaint on April 17, 2020, which was the first time Officer Roach was named as a defendant. Because Plaintiff did not name Officer Roach as a defendant until after the limitations period had expired, Defendants assert that Plaintiff's claims against Officer Roach are time-barred and must be dismissed. Mot. to Dismiss 17-18.

In response, Plaintiff argues that his claims are not time-barred because: (1) Defendants stipulated that Plaintiff would amend the Original Complaint to name Officer Roach in place of "John Doe," and, therefore, Plaintiff claims Defendants waived a statute-of-limitations defense; (2) the Amended Complaint "relates back" to the date the Original Complaint was filed pursuant to Federal Rule of Civil Procedure 15 ("Rule 15"); and (3) the limitations period should be equitably tolled because Plaintiff alleges DPD refused to identify Officer Roach. *See* Pl.'s Resp. in Opp. to Defs.' Mot. to Dismiss the Am. Compl. ("Response") [ECF No. 32] 8-11. The Court addresses each contention in turn.

### (1)      *Waiver*

Without citing any authority, Plaintiff argues that Defendants waived a statute-of-limitations defense by stipulating that Plaintiff would amend the Original Complaint to substitute Officer Roach in place of John Doe. Resp. 9. Although arguments made without citation to authority are waived, *Wilson v. City of Mission*, Civil Action No. 7:18-cv-0399, 2020 WL 2079359, at *10 (S.D. Tex. Apr. 30, 2020), the Court will address this assertion in the interest of justice. A statute-of-limitations defense is an affirmative defense that is generally not waived unless a party fails to assert it in an answer to a complaint or responsive pleading. *See Brooks v. United Dev. Funding III, L.P.*, Civil Action No. 4:20-cv-0150-O; 2020 WL 6132225, at *2 n.7 (N.D. Tex. June 18, 2020) (citing *Lucas v. U.S.*, 807 F.2d 414, 417 (5th Cir. 1986)) ("[A]s an

affirmative defense, the statute-of-limitations defense is generally not waived unless a party fails to assert it in an answer to a complaint."); *Lucas*, 807 F.2d at 417 (failure to set forth affirmative defense in responsive pleading generally results in waiver).

There is no indication Officer Roach waived a statute-of-limitations defense. Officer Roach asserted the defense in his answer to the Second Amended Complaint, Officer Nathan Roach's Answer to Pl.'s Second Am. Compl. & Assertion of Immunity [ECF No. 29] ¶ 2.08, and again in the Motion to Dismiss, Mot. to Dismiss 17-18. Furthermore, the Stipulation does not indicate that the parties contemplated a waiver of the statute of limitations, or that Defendants otherwise agreed or intended to waive a statute-of-limitations defense. *See Wood v. Milyard*, 566 U.S. 463, 474 (2012) ("Waiver is the intentional relinquishment or abandonment of a known right.") (internal quotation marks, alterations, and citation omitted); *Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003) ("There can be no waiver of a right if the person sought to be charged with waiver says or does nothing inconsistent with an intent to rely upon such right.") (citation omitted). For these reasons, the Court finds that Plaintiff has not alleged sufficient facts to show that Officer Roach waived a statute-of-limitations defense.

## (2)   *Relation Back*

Plaintiff contends that Rule 15 permits his Amended Complaint to "relate back" to the date the Original Complaint was filed. *See* Resp. 9-10. Rule 15(c) governs when an amended pleading "relates back" to the date of a timely filed original pleading and is, therefore, considered timely even though it was filed after the statute of limitations expired. *See* FED. R. CIV. PROC. 15(c). Under Rule 15(c)(1), an amendment relates back to the date of an original pleading when:

(A) the law that provides the applicable statute of limitations allows relation back;

(B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or

7

(C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party brought in by amendment:

    (i)    received such notice of the action that it will not be prejudiced in defending on the merits; and

    (ii)    knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

FED. R. CIV. PROC. 15(c)(1). The Fifth Circuit has held that Texas law providing the applicable limitations period for personal injury claims does not allow relation back within the meaning of Rule 15(c)(1)(A).[3] *Balle v. Nueces Cnty.*, 952 F.3d 552, 557 (5th Cir. 2017). Therefore, Plaintiff cannot add Officer Roach as a defendant unless Rule 15(c)(1)(C) applies. *See Braud v. Transp. Serv. Co. of Ill.*, 445 F.3d 801, 806 (5th Cir. 2006) (citation omitted) ("Under federal law, adding a new defendant generally does not relate back to the filing of the original complaint unless Federal Rule of Civil Procedure [15(c)(1)(C)] applies."). Courts interpreting Rule 15(c)(1)(C) have held that three elements must be met before an amendment will relate back: (1) the same conduct, transaction, or occurrence; (2) notice; and (3) mistake. *Wilson*, 2020 WL 2079359, at *3. The parties do not appear to dispute the first two elements.[4] Thus, the Court turns to whether the "mistake" element has been met.

Plaintiff relies on *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538 (2010), as support for his position that his use of "John Doe" as a placeholder was a mistake under Rule 15(c)(1)(C). *See*

---

[3] Indeed, under Texas law, an amended pleading adding a new party does not ordinarily relate back to the original pleading. *Univ. of Tex. Health Sci. Ctr. at San Antonio v. Bailey*, 332 S.W.3d 395, 400 (Tex. 2011) (citing *Alexander v. Turtur & Assoc., Inc.*, 146 S.W.3d 113, 121 (Tex. 2004)). Texas law provides certain exceptions to this rule, including misidentification and misnomer. *Id.* Texas courts, however, do not permit "John Doe petitions" to toll the limitations period. *Riston v. Doe*, 161 S.W.3d 525, 530 (Tex. App. – Houston [14th Dist.] 2004, pet. denied).

[4] Defendants note that Plaintiff's summons was directed to "John Doe" and purportedly delivered to Lucia Bevers, an alleged custodian of records. Mot. to Dismiss 18. Defendants do not otherwise address the notice element.

Resp. 10. In *Krupski*, the Supreme Court held that a plaintiff's misunderstanding about which corporate entity was in charge of the ship on which plaintiff was injured was clearly a "mistake concerning the proper party's identity" under Rule 15(c). 560 U.S. at 554-55. Defendants counter that *Krupski* is distinguishable because the relation back doctrine pertains to unintentional error, not use of the "John Doe device," which Defendants characterize as an "intentional misidentification," as opposed to a mistake regarding the proper party's identity. *See* Defs.' Reply Br. Opposing Pl.'s Resp. to Second Mot. to Dismiss ("Reply") [ECF No. 33] 2-3.

Binding Fifth Circuit precedent resolves this issue. In a recent, factually similar case decided after *Krupski*, the Fifth Circuit reiterated its prior holding that "an amendment to substitute a named party for a John Doe does not relate back under Rule 15(c)." *Winzer v. Kaufman Cnty.*, 916 F.3d 464, 471 (5th Cir. 2019) (quoting *Whitt v. Stephens Cnty.*, 529 F.3d 278, 282-83 (5th Cir. 2008)). Similar to the facts in this case, the *Winzer* plaintiff initially brought suit against "unknown state troopers" for § 1983 violations and later added named defendants after the two-year limitations period had expired. *Id.* at 469-70. The district court held that the claims were time-barred and the Fifth Circuit affirmed. *Id.* at 470-71. In explaining its holding, the Fifth Circuit noted that Rule 15(c) is meant to "correct a *mistake* concerning the identity of a party," but "does not allow an amended complaint adding new defendants to relate back if the newly-added defendants were not named originally because the plaintiff did not know their identities." *Id.* at 470 (emphasis in original) (quotations omitted); *see also id.* at 471 ("Failing to identify individual defendants cannot be characterized as a mistake.") (alterations and quotation omitted).

For the same reason, the Court finds that Plaintiff's failure to identify Officer Roach in the Original Complaint cannot be characterized as a "mistake" under Rule 15(c). Unlike the factual situation in *Krupski*, Plaintiff did not simply misunderstand which prospective defendant to sue;

rather, Plaintiff did not name Officer Roach in the Original Complaint because Plaintiff did not know Officer Roach's identity. *Compare Krupski*, 560 U.S. at 549 ("[A] plaintiff might know that the prospective defendant exists but nonetheless harbor a misunderstanding about his status or role in the events giving rise to the claim at issue, and she may mistakenly choose to sue a different defendant based on that misimpression."), *with Winzer*, 916 F.3d at 471 ("[T]o the extent Appellants sued 'unknown officers,' they cannot use these 'John Doe' claims to now substitute in [new defendants] after the limitations period.") (citation omitted). Thus, the Fifth Circuit's holding in *Winzer* reaffirms prior Fifth Circuit precedent, and multiple district courts, which found that the use of "John Doe" does not qualify as a "mistake" under Rule 15(c). *See, e.g., Jacobsen v. Osborne*, 133 F.3d 315, 321-22 (5th Cir. 1998) (explaining that the policy of relation back is to correct a *mistake* concerning the identity of a party and concluding that the use of "John Doe" to identify an unknown party is not a "mistake" or "misidentification" at which the rule is aimed); *Myers v. Nash.*, 464 F. App'x 348, 349 (5th Cir. 2012) ("Rule 15(c) does not apply when John Doe defendants are named after the statute of limitations has run."); *Amin-Akbari v. City of Austin*, 52 F. Supp. 3d 830, 841 (W.D. Tex. 2014) ("The Fifth Circuit is clear that the later discovery of the identity of a defendant previously named as 'John Doe' does not constitute a mistake under Rule 15(c), as required to allow relation back of claims."). Accordingly, the Court finds that Plaintiff has not met the "mistake" element and Plaintiff's claims against Officer Roach do not relate back to the date the Original Complaint was filed. Nonetheless, the Court turns to whether there may be grounds for equitable tolling of the statute of limitations.

### (3)    *Equitable Tolling*

Without citing applicable authority, Plaintiff argues he is entitled to equitable tolling for two reasons: (1) Plaintiff claims DPD refused to identify the officer who shot Plaintiff; and (2) as a result of DPD's alleged refusal to assist, Plaintiff's counsel filed a "Right to Know" request with

the Texas Department of Public Safety ("TDPS"), but TDPS did not provide information sufficient to identify Officer Roach until April 2, 2020.[5]   Resp. 11.   "The doctrine of equitable tolling preserves a plaintiff's claims when strict application of the statute of limitations would be inequitable." *Lambert v. U.S.*, 44 F.3d 296, 298 (5th Cir. 1995).   "Because the Texas statute of limitations is borrowed in § 1983 cases, Texas' equitable tolling principles also control." *Martinez v. Hidalgo Cnty.*, 727 F. App'x 77, 78 (5th Cir. 2018) (per curiam) (citing *Rotella v. Pederson*, 144 F.3d 892, 897 (5th Cir. 1998)).   "Texas courts sparingly apply equitable tolling and look, inter alia, to whether a plaintiff diligently pursued his rights; litigants may not use the doctrine to avoid the consequences of their own negligence." *Myers*, 464 F. App'x at 349 (citing *Hand v. Stevens Transp., Inc. Emp. Benefit Plan*, 83 S.W.3d 286, 293 (Tex. App. – Dallas 2002, no pet.)) (internal quotation marks omitted).   It is Plaintiff's burden to show that equitable tolling is warranted. *Martinez*, 727 F. App'x at 78 (citing *Rotella*, 144 F.3d at 894-95).

The Court finds that Plaintiff has not met his burden.   First, Plaintiff's allegation that DPD refused to identify the officer who shot Plaintiff is conclusory and lacks a factual foundation.   For example, Plaintiff is silent as to when he contacted DPD seeking assistance, what efforts he exerted to obtain Officer Roach's identity, what DPD's response was (if any), and why Plaintiff concludes that DPD refused to assist.   Without sufficient supporting facts, the Court cannot consider equitable tolling on the basis of this threadbare assertion.   *See Ferrer*, 484 F.3d at 780 (the court does not accept conclusory allegations as true) (citation omitted); *see also Bogus v. Harris Cnty. Dist. Att'y*, 830 F. App'x 746, 747 (5th Cir. 2020) (per curiam) (finding limitations argument failed when plaintiff did not assert specific facts to support the argument).

---

[5] Plaintiff also asserts that the DPD officers were required to wear body cameras, but either turned them off or refused to wear them on the day Liggins was shot, which has allegedly impeded Plaintiff's ability to seek accountability. Compl. ¶¶ 35-36.   Plaintiff does not develop this argument and does not assert it in connection with his equitable tolling argument.

Second, the Fifth Circuit has declined to equitably toll a limitations period when a plaintiff files suit too late to allow discovery of a John Doe defendant. *See Balle*, 952 F.3d at 555-56, 558 (equitable tolling not warranted when plaintiff's inability to determine identity of "Jane Does" was attributable to his own decision to file suit only seven days before the statute of limitations had run). In contrast, the Fifth Circuit has found that enforcement of the statute of limitations was inequitable when the delay in determining the identity of an unknown defendant was *not* attributable to the plaintiff. *Green v. Doe*, 260 F. App'x 717, 719-20 (5th Cir. 2007) (equitable tolling was warranted when plaintiff sued "John Doe" almost 11 months prior to the expiration of the limitations period and the district court abused its discretion by denying plaintiff's discovery motions that would have allowed plaintiff to discover John Doe's identity).

The facts here indicate that Plaintiff's failure to timely identify Officer Roach was attributable to Plaintiff's own decision to seek Officer Roach's identity and file suit mere days before the limitations period expired. Plaintiff contends that because DPD refused to identify Officer Roach (without stating *when* Plaintiff contacted DPD), Plaintiff contacted TDPS, but TDPS did not respond sufficiently until April 2, 2020. Resp. 11. But, in a letter from TDPS, dated April 2, 2020, which Plaintiff attached to his Response, TDPS stated they did not receive Plaintiff's request until March 12, 2020—only eight days before the statute of limitations expired.[6]  Resp., 32-2. Plaintiff has provided no explanation for his decision to seek Officer Roach's identity and file the Original Complaint only days before the limitations period expired. *Amin-Akbari*, 52 F. Supp. 3d at 842 ("Because Plaintiff's own actions precluded his ability to identify the proper names

---

[6] Plaintiff also attached an automated response email from TDPS, dated March 12, 2020, indicating they received Plaintiff's request, but their response may take up to 10 business days. Resp., 32-1. Again, this illustrates that Plaintiff did not timely seek Officer Roach's identity. Moreover, given that TDPS responded with Officer Roach's identity within the expected 10-business-day period, Resp. 11, this demonstrates that Plaintiff likely could have obtained Officer Roach's identity earlier had he contacted TDPS with sufficient time before the statute of limitations expired.

of the John Doe defendants by not allowing himself time to conduct discovery, Plaintiff has not demonstrated that the Court should equitably toll the limitations period."). Plaintiff has, therefore, failed to establish that he actively pursued his judicial remedies or otherwise acted diligently. For these reasons, the Court finds that Plaintiff has not met his burden to show equitable tolling is warranted.

Therefore, because Plaintiff's claims against Officer Roach were filed after the limitations period expired, and because Plaintiff has not demonstrated that he is entitled to equitable tolling, Plaintiff's claims against Officer Roach are dismissed as time-barred. Finding that Plaintiff's claims against Officer Roach are time-barred, the Court need not address whether Officer Roach is entitled to qualified immunity. *See Horne v. Katzfey*, 252 F.3d 1356 (5th Cir. 2001) (declining to consider qualified immunity after finding claims were time-barred).

### B.   *Municipal Liability*

According to Plaintiff, the City is liable under § 1983 because: (1) the alleged conduct demonstrates the City's "custom" of using excessive or improper force; and (2) the City knew police officers needed training to interact with individuals experiencing mental health episodes, but refused to implement any formal training or policies on these issues. Compl. ¶¶ 43-45. Municipal liability under § 1983 has three elements: (1) a policymaker; (2) promulgates a policy or custom; (3) that is the "moving force" behind a constitutional violation. *See Blanchard-Daigle v. Geers*, 802 F. App'x 113, 116 (5th Cir. 2020) (citing *Monell*, 436 U.S. at 694). Defendants argue that Plaintiff's claim against the City fails because Chief Brown is not a policymaker, and Plaintiff has not identified an unconstitutional policy or custom that was promulgated by a policymaker. Mot. to Dismiss 5-9.

### (1)     *Policymaker*

Plaintiff concludes that Chief Brown is a policymaker because Plaintiff claims Chief Brown is the highest-ranking police officer within the DPD command structure and his orders relating to conduct of officers on the ground are not subject to review.  Compl. ¶¶ 53-55. Defendants, on the other hand, contend that Plaintiff's allegations are conclusory and Chief Brown is, at most, a decisionmaker, not a policymaker.  *See* Mot. to Dismiss 6-7.  In support, Defendants attach excerpts from the City of Duncanville Charter and Code of Ordinances, which states that the City's powers are vested in a Council.  *Id.*, 27-1, § 2.06 ("[A]ll powers of the City and the determination of all matters of policy shall be vested in the Council.").

Whether a city official is a policymaker is a question of state and local law.  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124-25 (1988).  A policymaker is "one who takes the place of the governing body in a designated area of city administration."  *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 167 (5th Cir. 2010) (quoting *Webster v. City of Hous.*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc)).  The policymaker must "decide the goals for a particular city function and devise the means of achieving those goals."  *Id.* (quoting *Bennett v. City of Slidell*, 728 F.2d 762, 769 (5th Cir. 1984) (en banc)).  Policymaking authority requires more than a showing of mere decision making authority.  *Bennett*, 728 F.2d at 769 (citation omitted).  "Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered."  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986).  A city's governing body may delegate policymaking authority by: (1) express statement or formal action; or (2) conduct or practice.  *Bennett*, 728 F.2d at 769.

Plaintiff does not allege an express statement or formal action.  Nor does Plaintiff allege sufficient facts to show delegation through conduct or practice.  Even if Chief Brown's on-the-ground orders are not reviewable, that is not, by itself, sufficient to demonstrate that he is a

14

policymaker.  The Fifth Circuit has stated that neither complete discretionary authority nor the unreviewability of such authority automatically results in municipal liability—there must be more. *Zarnow*, 614 F.3d at 168 (citing *Bolton*, 541 F.3d at 551). Although the Fifth Circuit has previously found that a police chief is a policymaker in certain circumstances, Plaintiff has not alleged sufficient facts to make that showing.  For example, in *Zarnow*, the plaintiff alleged that the Wichita Falls chief of police was a policymaker.  *Id.* at 167.  In support, the plaintiff produced several "General Orders" issued by the chief of police that addressed department policies.  *Id.*  The Fifth Circuit found that the General Orders promulgated by the police chief sufficed to be the "more" that is needed to prove policymaking authority.  *Id.* at 168.

In contrast, Plaintiff has not alleged that the City delegated policymaking authority to Chief Brown, has not provided factual support for his assertion that Chief Brown's on-the-ground orders are unreviewable, has not pointed to any state or local law demonstrating that Chief Brown is a policymaker, and has not alleged facts to support the "more" that is required to prove policymaking authority. *See Arevalo v. City of Farmers Branch*, Civil Action No. 3:16-cv-1540-D, 2017 WL 5569841, at *6 (N.D. Tex. Nov. 20, 2017) (finding plaintiff failed to plausibly plead that police chief was a final policymaker by relying on conclusory assertions); *Doe v. City of Springtown*, Civil Action No. 4:19-cv-0166-P, 2020 WL 1861682, at *3 (N.D. Tex. Apr. 14, 2020) (rejecting plaintiff's assertion that Texas police chiefs are policymakers as a matter of law and finding that plaintiff failed to plead sufficient facts to demonstrate that police chief was a policymaker). Therefore, the Court finds that Plaintiff has not alleged sufficient facts to meet the "policymaker" element.

### (2)      *Official Policy or Custom*

There are multiple forms an "official policy or custom" may take. *See Zarnow*, 614 F.3d at 168. First, an official policy or custom is most clearly established through a policy statement

formally announced by an official policymaker. *See id.* Second, where an "official policy" is not explicit, a persistent, widespread practice by city officials or employees that is so common and well settled as to constitute a "custom" will suffice. *See id.* at 168-69. Third, in rare circumstances a plaintiff may show the existence of a custom or policy by demonstrating that a policymaker took a single unconstitutional action. *Id.* at 169 (citations omitted); *Howell v. Town of Ball*, 827 F.3d 515, 527 (5th Cir. 2016). Finally, a failure to train may represent a policy for which a municipality may be held liable if the failure to train directly caused the injury. *Blanchard-Daigle*, 802 F. App'x at 117 (citing *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). For liability to attach, the policy "must either be unconstitutional or adopted with deliberate indifference to the known or obvious fact that such constitutional violations would result." *Id.* at 116 (quoting 577 F.3d 612, 617 (5th Cir. 2009) (internal quotation marks omitted). "To base deliberate indifference from a single incident, it should have been apparent to the policymaker that a constitutional violation was the highly predictable consequence of a particular policy or failure to train." *Id.* (quoting *Burge v. St. Tammany Par.*, 336 F.3d 363, 373 (5th Cir. 2003)) (internal quotation marks omitted). Deliberate indifference goes beyond gross negligence. *Id.* (citation omitted).

Plaintiff does not identify a written policy that caused him constitutional harm. Instead, he argues: (1) the alleged conduct demonstrate a "custom" of using excessive or improper force; (2) despite the availability of certified mental health peace officers, a crisis intervention team, and non-lethal tools such as tasers and rubber bullets, Chief Brown chose not to use these resources and instead ordered officers into Plaintiff's home with live ammunition; and (3) the alleged facts demonstrate a lack of policies and proper training. Compl. ¶¶ 44, 56-58. The Court construes these allegations as touching on three of the four theories of § 1983 municipal liability described

above: (1) widespread practice or custom; (2) single instance of unconstitutional conduct; and (3) failure to train.

### a. *Widespread Practice or Custom*

"A customary policy consists of actions that have occurred for so long and with such frequency that the course of conduct demonstrates the governing body's knowledge and acceptance of the disputed conduct." *Zarnow*, 614 F.3d at 169 (citing *Webster*, 735 F.2d at 842). To survive a motion to dismiss on an unconstitutional custom or practice claim, a plaintiff must allege sufficient facts to support a reasonable inference that there was a pattern of misconduct involving similar acts—as opposed to isolated instances. *Robles v. Ciarletta*, 797 F. App'x 821, 833 (5th Cir. 2019) (citation omitted). "A plaintiff's allegations regarding the policy or custom cannot be conclusory, and they must contain specific facts showing the existence of such a custom." *Rodriguez v. S. Heath Partners, Inc.*, Civil Action No. 3:20-cv-0045-D, 2020 WL 2928486, at *5 (N.D. Tex. June 3, 2020) (citing *Spiller v. City of Tex. City Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997)).

Other than describing the events that gave rise to this action, Plaintiff has not alleged any additional facts from which the Court may infer the existence of a widespread practice or custom of unconstitutional conduct. This is not enough. *Ratliff v. Aransas Cnty.*, 948 F.3d 281, 285 (5th Cir. 2020) (pleading the existence of a widespread practice or custom must do more than merely describe the incident that gave rise to the injury) (citation omitted); *Bennett*, 728 F.2d at 768 n.3 ("Isolated violations are not the persistent, often repeated, constant violations that constitute custom and policy.") (citation omitted); *Sinegal v. City of El Paso*, 414 F. Supp. 3d 995, 1008 (W.D. Tex. 2019) ("While a detailed catalogue of similar incidents may not always be available to plaintiffs at the 12(b)(6) stage, a widespread practice claim must ordinarily at least identify similar incidents to survive dismissal.") (internal quotation marks, alterations, and citation

omitted). Thus, the Court finds that Plaintiff has not alleged sufficient facts to support a reasonable inference that the use of excessive force in the City is a widespread practice or custom.

### b.   *Single Instance of Unconstitutional Conduct by a Policymaker*

Plaintiff alleges that Chief Brown refused to use mental health professionals and non-lethal tools, instead ordering police officers into the home with live ammunition. *See* Compl. ¶¶ 56-58. Although not stated directly, Plaintiff appears to assert that the City should be held liable based on Chief Brown's decisions. In general, "a single shooting incident by a police officer is insufficient as a matter of law to establish the official policy requisite to municipal liability under § 1983." *Blanchard-Daigle*, 802 F. App'x at 117 (quoting *Rodriguez v. Avita*, 871 F.2d 552, 554-55 (5th Cir. 1989)) (internal alterations omitted). However, in rare circumstances, a single decision may constitute municipal policy when an official or entity with policymaking authority performs the specific act that forms the basis of the § 1983 claim. *See Webb v. Town of Saint Joseph*, 925 F.3d 209, 215 (5th Cir. 2019) (citing *Davidson v. City of Stafford*, 848 F.3d 384, 395 (5th Cir. 2017)). The Fifth Circuit rarely applies the "single incident exception" to avoid infringing on the Supreme Court's repeated rejection of *respondeat superior* liability. *Blanchard-Daigle*, 802 F. App'x at 117 ("This exception is applied only in *extreme circumstances* in order to not run afoul of the rule that municipalities cannot be held liable via *respondeat superior*.") (emphasis added); *Valle v. City of Hous.*, 613 F.3d 536, 549 (5th Cir. 2010) ("[T]his 'single incident exception' is extremely narrow and gives rise to municipal liability only if the municipal actor is a final policymaker.") (citation omitted); *Burge*, 336 F.3d at 373 ("The single incident exception, however, is a narrow one, and one that we have been reluctant to expand.") (citation omitted).

To prevail under this narrow exception, Plaintiff must show that Chief Brown has final policymaking authority and that his decisions or orders were the moving force behind the constitutional injury. *See Valle*, 613 F.3d at 543. To meet the moving force element, Plaintiff

must demonstrate that the policy (in this case, Chief Brown's decisions) was unconstitutional or was adopted with deliberate indifference to the known or obvious fact that such constitutional violations would result. *See Webb*, 925 F.3d at 219. Even if Plaintiff had demonstrated that Chief Brown is a policymaker, Plaintiff has not alleged sufficient facts to prevail under the single incident exception. First, Plaintiff's allegation that Chief Brown refused to utilize mental health professionals or non-lethal tools is conclusory and lacks a factual foundation.[7] Second, Plaintiff has failed to establish that Chief Brown's orders formed the basis for Plaintiff's § 1983 action. Third, Plaintiff has not alleged sufficient facts to establish that Chief Brown's decisions were unconstitutional or were made with deliberate indifference that a constitutional violation would result. Thus, the Court finds that Plaintiff has failed to demonstrate that Chief Brown's decisions constitute the type of "extreme circumstance" in which a single unconstitutional act is sufficient to impose municipal liability.

### c.   *Failure to Train*

Plaintiff alleges that the City failed to train officers to interact with individuals experiencing a severe mental health episode, and specifically failed to train Officer Roach on de-escalation techniques.[8] Compl. ¶¶ 4, 47. To prevail on a "failure to train" theory, a plaintiff must demonstrate that: (1) the municipality's training procedures were inadequate; (2) the municipality was deliberately indifferent in adopting its training policy; and (3) the inadequate training policy

---

[7] In fact, according to Plaintiff, Chief Brown told Mary Brown that a negotiating team would be sent to the scene. Compl. ¶ 20. This undercuts Plaintiff's allegation that Chief Brown "refused" to utilize non-lethal options. Although it is unclear why the negotiating team did not allegedly make contact with Plaintiff before the shooting, it is an inferential leap to claim that Chief Brown refused to utilize non-lethal options based on the facts alleged.

[8] Plaintiff also asserts that Defendants failed to "supervise, screen, discipline, transfer, counsel or otherwise properly equip and control officers including those who are known, or who should have been known, to engage in the use of excessive force and/or deadly force." Compl. ¶ 4. Plaintiff, however, does not subsequently develop these arguments or provide additional factual or case-law support. Thus, the Court does not address these additional assertions. *Wilson*, 2020 WL 2079359, at *10 (arguments asserted without citation to authority and left undeveloped are waived) (citation omitted).

directly caused the violations in question. *Zarnow*, 614 F.3d at 170 (citation omitted). For liability to attach, a plaintiff must allege with specificity how a particular training program is defective. *Id.* (citation omitted). Generally, evidence of isolated violations is not sufficient. *See id.* (citation omitted). Similar to a widespread practice theory, a plaintiff must typically allege multiple incidents of similar unconstitutional conduct to survive a motion to dismiss. *Sinegal*, 414 F. Supp. 3d at 1009 (citing *Speck v. Wiginton*, 606 F. App'x 733, 736 (5th Cir. 2015)). Here again, Plaintiff's allegations are conclusory and lack factual support. Plaintiff also fails to identify any other instance of inadequate training beyond allegations of what happened to him on the day in question. *See Cozzo v. Tangipahoa Par. Council-President Gov't*, 279 F.3d 273, 286-87 (5th Cir. 2002) (citation omitted) ("Proof of a single instance, rather than a pattern of similar violations, normally will not sustain a plaintiff's claim that such a lack of training or supervision caused a violation of her constitutional rights."). Moreover, Plaintiff's allegation that the City failed to train Officer Roach is not sufficient to attach liability to the City. *City of Canton*, 489 U.S. at 390-91, *abrogated on other grounds by Farmer v. Brennan*, 511 U.S. 825 (1994) (citation omitted) ("That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program.").

In narrow circumstances, courts have applied the "single incident exception" to failure to train claims. *Valle*, 613 F.3d at 549. To rely on this exception in the failure to train context, a plaintiff must prove the "*highly predictable consequence* of a failure to train would result in the specific injury suffered, and that the failure to train represented the moving force behind the constitutional violation." *Id.* (citation omitted) (emphasis in original). Here, Plaintiff has not alleged sufficient facts showing that the "highly predictable consequence" of the City's alleged

failure to train would result in Plaintiff's injury. Moreover, as with most of Plaintiff's allegations, Plaintiff's assertion that the City failed to train Officer Roach on de-escalation techniques is conclusory and lacks a factual foundation. However, even if the City did fail to train Officer Roach on de-escalation techniques, such failure to train in one limited area is not sufficient to prevail under a failure to train theory. *See Est. of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 386 (5th Cir. 2005) (citations omitted) (noting single incident exception has applied when the court finds a complete failure to train, not just a failure to train in one limited area). Thus, the Court finds that the single incident exception is not applicable here. Furthermore, because Plaintiff has not met his pleading burden with regard to the first "failure to train" element, and because Plaintiff did not address the remaining two elements beyond asserting the elements in a conclusory fashion, the Court finds that Plaintiff has not alleged sufficient facts to establish municipal liability based on a failure to train theory.

### (3)  *Moving Force*

Finally, Plaintiff must show a "violation of constitutional rights whose moving force is the policy or custom." *Zarnow*, 614 F.3d at 166 (quotation omitted). To satisfy "moving force," Plaintiff must show a direct causal link between the policy and the violation. *Blanchard-Daigle*, 802 F. App'x at 116 (citation omitted). "But for" causation is not sufficient. *Fraire v. City of Arlington*, 957 F.2d 1268, 1281 (5th Cir.1992). Plaintiff must also show that the municipal action was taken with the requisite degree of culpability, i.e. deliberate indifference. *See Valle*, 613 F.3d at 542 (citations omitted); *see also Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 405 (1997) ("Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee.") (citation omitted). Plaintiff has failed to allege facts sufficient to infer a direct causal link between

21

the City's policies, Chief Brown's orders, or a failure to train, on the one hand, and a constitutional violation, on the other hand. Nor has Plaintiff alleged facts demonstrating deliberate indifference. Therefore, Plaintiff has failed to satisfy the "moving force" element.

At bottom, Plaintiff has failed to go beyond formulaic recitation of the elements and conclusory allegations. *Iqbal*, 556 U.S. at 678 (citation omitted) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Accordingly, even after viewing the allegations in the light most favorable to Plaintiff, the Court finds that Plaintiff has failed to state a claim for municipal liability against the City.

## IV. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendants' Second Motion and Brief to Dismiss [ECF No. 27]. Plaintiff already amended his complaint twice and has not formally requested leave to amend. Nevertheless, because Plaintiff did not amend his complaint in response to a ruling from the Court identifying specific pleading deficiencies, and given the federal rules' liberal policy of allowing amendments to pleadings, the Court **GRANTS** Plaintiff leave to amend his complaint. *See United Healthcare Servs., Inc. v. Synergen Health, LLC*, No. 3:20-CV-00301-E, 2021 WL 512982, at *6 (N.D. Tex. Feb. 11, 2021) (citation omitted) (granting leave to amend even where plaintiff did not request leave to amend because courts usually grant one opportunity to replead after a first motion to dismiss). Plaintiff must file an amended complaint by April 12, 2021. If an amended complaint is not filed within such time, the claims dismissed above will be dismissed with prejudice.

**SO ORDERED.**

SIGNED March 11, 2021.

**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**