**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS – DALLAS
DIVISION**

---

| | | |
|---|---|---|
| LOU LIGGINS, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **CIV NO. 3:20-cv-0654-S** |
| | : | |
| DUNCANVILLE, TEXAS | : | |
| Defendant. | : | |

---

## PLAINTIFF'S THIRD AMENDED COMPLAINT

NOW COMES Lou Liggins, complaining of Defendant Duncanville, Texas ("the City"), and for cause would show the Honorable Court as follows:

1. On March 20, 2018, Lou Liggins was shot by Nathan Roach, a 25-year-old white male Duncanville, Texas police officer.

2. This is an action brought by the Plaintiff against Defendant, Duncanville, Texas for its officer Nathan Roach's use of excessive force under the color of state law resulting in the unlawful shooting of Lou Liggins in violation of his rights under the Fourth Amendment of the United States Constitution secured pursuant to 42 U.S.C. § 1983.Plaintiff alleges that Duncanville failed to properly train officers by failing to properly implement training and policies governing crisis intervention and interaction with individuals with severe mental health issues.

3. The City had a duty, but failed to implement and/or enforce training, policies, practices and procedures for the Duncanville Police Department that

1

respected Plaintiff's constitutional rights.

4. Defendant City's failure to adequately train Officer Roach, failure to implement the necessary policies and procedures, and affirmative implementation of unconstitutional policies caused Plaintiff's unwarranted and excruciating physical and mental anguish and death.

5. Officer Roach acted in an objectively unreasonable manner and disregarded the rights of Plaintiff upon the orders of the City's policymaker Chief Brown.

6. For these civil rights violations and other causes of action discussed herein, Plaintiff seeks redress and compensation for damages for his unjustified shooting.

## **PARTIES**

7. Plaintiff, Lou Liggins, is an adult individual and a resident of the state of Texas.

8. Officer Roach is and/or was a police officer with the Duncanville Police Department.

9. Upon information and belief, he is a twenty-five-year-old white male resident of the state of Texas.

10. Defendant Duncanville, Texas is a municipality duly organized and existing under the laws of the state of Texas. Defendant Duncanville, Texas is responsible for the funding, budget, policies, operation, and oversight of the Duncanville Police Department ("DPD"). The DPD is also responsible for preventive, investigative, and enforcement services for all citizens of

Duncanville. Defendant Duncanville may be served via the Office of the City Manager at 203 E. Wheatland Rd. Duncanville, Texas.

## JURISDICTION AND VENUE

11. Jurisdiction exists in this Honorable Court pursuant to 28 U.S.C. §§ 1331 and 1343 as this action is brought pursuant to 42 U.S.C. § 1983 to redress a deprivation of the Fourth Amendment rights of Lou Liggins. Plaintiff further invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 to adjudicate pendent state law claims.

12. Venue is proper in this Honorable Court as Defendants' constitutional violations and intentional torts and otherwise violative conduct occurred within the Northern District of Texas.

## FACTS

13. On or about, March 20, 2018, Lou Liggins began suffering from a severe mental health episode.

14. Lou had stopped taking prescribed medications and was expressing suicidal ideations.

15. Lou's mother, Mary Brown called health care providers associated with Lou's mental health treatment to request emergency assistance.

16. Those health care providers advised Ms. Brown to call 911.

17. Ms. Brown was reluctant to do so, but called Duncanville police and informed them that Lou was suffering from a mental health episode.

18. Ms. Brown further informed Duncanville police that Lou was unarmed and

not dangerous.

19. Ms. Brown further relayed that there were no firearms in the house.

20. This information – that Lou was unarmed and suffering a mental health episode – was communicated to the officers arriving on scene, including Officer Roach and Chief of Police Robert Brown, via police radio and word of mouth.

21. Ms. Brown received repeated assurances from the Chief of Police Robert Brown that the Duncanville police department would not shoot Lou and that a negotiating team would be brought to the scene.

22. Despite these assurances, a negotiating team was not brought to the scene.

23. Chief Brown had full tactical control and authority at the scene.

24. Despite having one available to him, Chief Brown did not order nor permit a mental health professional to make contact with Lou.

25. Texas law requires the Duncanville to have certified mental health officers who have undergone extensive training for dealing with individual's in acute mental health episodes.  This training includes de-escalation.

26. The role of those officers is to engage with individuals in situations like this, and help to deescalate the situation in a peaceful manner.

27. Despite having certified mental health peace officers available to him, Chief Brown did not order nor permit a certified mental health peace officer to make contact with Lou.

28. Despite having a negotiating team available to him as evidenced by his

4

statement to Ms. Brown, Chief Brown did not order nor permit the negotiating team to make contact with Lou.

29.  The City also equips officers with non-lethal compliance mechanisms such as tasers, tear gas, and pepper spray.

30.  From among all the options available to deal with an individual in an acute mental health episode, Chief Brown decided that the City would respond by sending armed officers with live hollow-point rounds into the house.

31.  Chief Brown made this decision despite his knowledge that the following facts were true:

    a.  Lou was standing in his own home.

    b.  Lou was unarmed.

    c.  Lou had not been accused of committing any crime.

    d.  Lou was suffering from a mental health crisis.

32.  At Chief Brown's order, Duncanville police officers entered the house with guns drawn.

33.  Chief Brown made this decision despite the enormous and well-known studies and literature that reiterates: "The essential difference between suspect encounter training, that officers traditionally receive, and how to approach the mentally ill is ***the need to be non-confrontational… the same command techniques that are employed to take a criminal suspect into custody can only serve to escalate a contact with the mentally ill into violence.***" *See* Texas Judicial Commission on Mental Health, *Responding to the Mentally Ill: A Guide*

*for Texas Peace Officers* at p. 42, May 2018,  accessed at:

http://texasjcmh.gov/media/1760/texas-peace-officer-guide-for-responding-to-the-mentally-il.pdf (emphasis added).

34. While many Duncanville police officers on the scene were equipped with bean bags, rubber bullets, and other non-lethal tools, Chief Brown instructed the officers to enter the house equipped only with live rounds and their firearms drawn.

35. As the officers entered the home and encountered Lou, he did not yell at them, nor did he charge at them.

36. Lou attempted to retrieve his cell phone from his pocket.

37. As he did so, Lou was shot without any warning by Defendant Duncanville Police Officer Nathan Roach.

38. Immediately after the shooting, one Duncanville police officer screamed at Defendant Roach, "What the hell are you doing?!"

39. Lou was transported from the scene to Methodist Health System where he received emergency surgery for the gunshot wound to his abdomen.

40. Lou has lasting pain and physical limitations as a result of the gunshot wound.

41. Under Texas law, the officers involved were required to be wearing body cameras.

42. Upon information and belief, the officers either turned off their body cameras or refused to wear their body cameras.

43. As a result, Defendant Duncanville, Texas has not produced any body camera

footage of the incident and has therefore impeded Mr. Liggins's ability to seek

accountability for the violation of his constitutional rights.

## CHIEF BROWN AS A POLICYMAKER

44. Chief of Police Robert Brown is the policymaker for Duncanville, Texas as it

relates to on the ground command of Duncanville Police Department Officers.

45. Chief Brown is the highest-ranking police officer within the Duncanville Police

Department command structure.

46. Chief Brown's orders relating to the conduct of officers on the ground are not

subject to review and officers are obligated to follow them.

47. The Duncanville City Council has explicitly granted the Chief policymaking

authority in this area.

48. Duncanville Code of Ordinances Chapter 15 Section 5 provides the Chief shall

have authority to "assign to each policeman his duties and may order any

policeman to render such service … whenever and wherever, in his opinion,

the occasion shall require it."

49. The same ordinance provides the Chief "shall also see that the policemen are

equipped with the proper arms and equipment which the emergency shall

require."

50. Chapter 15 Section 7 provides "It shall be the duty of policemen to be obedient

to the orders of … the chief of police communicated to them in person."

51. Chapter 15 Section 13 provides that the failure to follow the orders of the chief

of police is grounds for termination of an officer.

## COUNT I: MUNICIPAL LIABILITY
### LOU LIGGINS AGAINST DEFENDANT DUNCANVILLE TEXAS
#### *Failure to Train*

52. Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein.

53. The conduct of Officer Roach as set forth in the preceding paragraphs evinces the excessive and unreasonable use of force in violation of Plaintiff's constitutional rights.

54. The conduct set forth *supra* evinces a lack of policies and training instructing officers on the appropriate manner in which to handle individuals suffering from acute and severe mental health episodes.

55. It is widely known that de-escalation techniques are necessary for the proper handling of individuals with mental health issues.

56. Defendant Duncanville had actual knowledge of the need for policies and training related to police officer interactions with individuals suffering from mental health episodes, yet Duncanville refused to implement any formal policies or training on these issues.

57. Duncanville's actual knowledge is evidence by legislation passed by the Texas state legislature:

    a. 1993 H.B. 771 established a goal in Section 531.00(g) of the Health and Safety Code of at least one special officer for mental health

assignment in each county and provides for training of such officers; and,

b.  S.B. 1473 amended 1701.253 of the Occupations Code by requiring training in "de-escalation and crisis intervention techniques to facilitate interaction with persons with mental impairments." The amendment made such training mandatory for persons licensed as a police officer for more than two years.

58.  Despite this knowledge, Duncanville did not train Officer Roach on techniques to deescalate interactions with people with mental impairments.

59.  This failure to train Defendant Roach was in contravention of state law.

60.  As a result, Defendant Roach was woefully ill-equipped to address individuals suffering from mental health incidents and he resorted to unnecessary deadly force.

61.  This lack of training was a moving force behind the deprivation of Plaintiff's constitutional rights.

**WHEREFORE**, Plaintiff demands judgment in his favor, and against Defendant the Duncanville, Texas pursuant to 42 U.S.C. § 1983, in an amount in excess of One Million Dollars ($1,000,000.00), including interest, delay damages, costs of suit, general and specific damages, attorneys' fees under 42 U.S.C. § 1985 and 1988, and any other damages legally appropriate at the time of jury trial.

## COUNT II: MUNICIPAL LIABILITY
## LOU LIGGINS AGAINST DEFENDANT DUNCANVILLE
## TEXAS
### *Action by a Policymaker*

62. Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein.

63. The conduct of Defendant Roach as set forth in the preceding paragraphs evinces the excessive and unreasonable use of force in violation of Plaintiff's constitutional rights.

64. Chief of Police Robert Brown is a policymaker for Duncanville, Texas as it relates to on the ground command of Duncanville Police Department Officers.

65. Duncanville had certified mental health peace officers and a crisis intervention team.

66. Duncanville also had non-lethal tools at its disposal, including tasers, tear gas, and rubber bullets.

67. Nonetheless, Chief Brown did not utilize the mental health tools and non-lethal tools available to him and instead ordered officers equipped with hollow point bullets into the house to interact with Mr. Liggins.

68. Following the Chief's orders, Officer Roach entered the home unprepared to deal with the an individual in acute mental distress, as he lacked the specialized training of mental health professionals and officers, as well as the non-lethal tools to resolve the situation.

69. Chief Brown's orders evinced a callous disregard for individuals suffering from mental health episodes and deliberate indifference to Mr. Liggins' constitutional rights.

70. Chief Brown's orders were the moving force behind the deprivation of Mr.

Liggins' Fourth Amendment rights.

**WHEREFORE**, Plaintiff demands judgment in his favor, and against Defendant the Duncanville, Texas pursuant to 42 U.S.C. § 1983, in an amount in excess of One Million Dollars ($1,000,000.00), including interest, delay damages, costs of suit, general and specific  damages, attorneys' fees under 42 U.S.C. § 1985 and 1988, and any other damages legally appropriate at the time of jury trial.

Respectfully submitted,

/s/ John J. Coyle
**McELDREW YOUNG**
123 S. Broad Street, Suite 2250
Philadelphia, PA 19109

S. Lee Merritt, Esquire
**MERRITT LAW FIRM**
1910 Pacific Ave., Suite 8000
Dallas, TX 75201

Date: April 10, 2021

11