# United States District Court
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| LOU LIGGINS | § |
| | § |
| v. | § CIVIL ACTION NO. 3:20-CV-654-S |
| | § |
| CITY OF DUNCANVILLE, TEXAS, et al. | § |

## MEMORANDUM OPINION AND ORDER

This Memorandum Opinion and Order addresses Defendant's Third Motion & Brief to Dismiss ("Motion to Dismiss") [ECF No. 38]. For the reasons that follow, the Court **GRANTS** the Motion to Dismiss.

## I.  BACKGROUND

This case concerns the shooting of Plaintiff Lou Liggins by a City of Duncanville ("City") police officer responding to an emergency call.[1] Plaintiff, who has a history of mental illness, experienced a severe mental health episode and expressed suicidal ideations after he stopped taking his medication. 3rd Am. Compl. [ECF No. 37] ¶¶ 13-14. Plaintiff's mother contacted the Duncanville Police Department and informed them of her son's condition and that he was not armed or dangerous. *Id.* ¶¶ 17-18. According to Plaintiff, this information was communicated to the officers arriving on the scene, including Officer Nathan Roach ("Officer Roach") and the City's Chief of Police Robert Brown ("Chief Brown"). *Id.* ¶ 20. Plaintiff alleges that officers entered the home with guns drawn, at which time Plaintiff attempted to retrieve his cell phone from his pocket. *Id.* ¶¶ 32, 36. As he did so, Officer Roach shot Plaintiff in the abdomen.[2] *Id.* ¶ 37. Based on these allegations, Plaintiff filed a complaint against Officer Roach and the City.

---

[1] A more detailed summary of the factual and procedural background is set forth in this Court's previous Memorandum Opinion and Order [ECF No. 36].

[2] It remains unclear whether Plaintiff's gunshot wound was fatal. Plaintiff has not addressed this uncertainty previously raised by the Court. *See* ECF No. 36 at 2 n.1. The Third Amended Complaint states that the shooting

The Court previously granted Officer Roach and the City's motion to dismiss Plaintiff's Second Amended Complaint [ECF No. 27]. *See* ECF No. 36. Specifically, the Court found that Plaintiff's 42 U.S.C. § 1983 excessive force claim and Texas state law assault and battery claim against Officer Roach were filed after the limitations period expired. *See id.* at 13. As to the § 1983 municipal liability claim against the City, the Court found that Plaintiff did not allege sufficient facts to show that Chief Brown was a policymaker. *See id.* at 14-15. The Court also found that Plaintiff failed to allege sufficient facts to show that the City had a policy or widespread practice that was unconstitutional, or that Chief Brown's decisions were made with deliberate indifference that a constitutional violation would result. *See id.* at 17-19. After obtaining leave of Court, Plaintiff filed the Third Amended Complaint, which is the live complaint before the Court.

In the Third Amended Complaint, Plaintiff removed Officer Roach as a defendant and repleaded the same § 1983 municipal liability claims against the City for failure to train police officers (Count 1) and Chief Brown's alleged role as a policymaker for the City (Count 2). *Id.* ¶¶ 52-70. However, in his Response, Plaintiff abandoned his failure to train claim, conceding that it "lacks sufficient factual basis to demonstrate he is entitled to relief." Pl.'s Resp. [ECF No. 41] at 9 n.1. The sole remaining claim, therefore, is Count 2, the policymaker claim. In addition to the allegations included in his previous complaints, Plaintiff now cites Chapter 15 of the City of Duncanville Code of Ordinances ("Duncanville Code of Ordinances") and a publication by the Texas Judicial Commission on Mental Health titled "Responding to the Mentally Ill: A Guide for Texas Peace Officers" as additional support of his claims. *Id.* ¶¶ 33, 44-51. Plaintiff also adds that Officer Roach acted "upon the orders of" Chief Brown, alleging that Chief Brown's orders evinced a "deliberate indifference to [Plaintiff]'s constitutional rights." *Id.* ¶¶ 5, 69. The City

---

resulted in Plaintiff's "death" while also stating that Plaintiff has "lasting pain and physical limitations," implying that Plaintiff is still alive. 3rd Am. Compl. at ¶¶ 4, 40.

filed the instant Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiff's additional allegations do not cure the deficiencies previously identified by the Court.

## II. LEGAL STANDARD

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility does not require probability, but a plaintiff must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.* The court must accept well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007). However, the court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (citation omitted). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

In ruling on a Rule 12(b)(6) motion, the court limits its review to the face of the pleadings. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). However, the court may consider documents outside of the pleadings if they fall within certain limited categories, including "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities,*

*Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (internal quotation marks omitted) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). The court may also consider documents "attached to a motion to dismiss that 'are referred to in the plaintiff's complaint and are central to the plaintiff's claim.'" *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010) (quoting *Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003)).

The ultimate question is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002). At the motion to dismiss stage, the court does not evaluate the plaintiff's likelihood of success. It only determines whether the plaintiff has stated a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977).

### III.   ANALYSIS

Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). To state a claim under § 1983, a plaintiff must allege facts showing (1) he has been deprived of a right secured by the Constitution and the laws of the United States; and (2) the deprivation occurred under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005).

A municipal entity cannot be held vicariously liable under § 1983 for the individual acts of its employees. 42 U.S.C. § 1983; *see Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997); *Doe on Behalf of Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998). "It is only when the 'execution of the government's policy or custom . . . inflicts the injury' that the municipality may be held liable." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citations omitted). Therefore, to impose § 1983 liability on the City, Plaintiff must sufficiently

4

allege "a policymaker; an official policy [or a custom]; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001) (quoting *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978)).

### A. *Policymaker*

Whether a city official is a policymaker is a question of state and local law. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124-25 (1988). A policymaker is "one who takes the place of the governing body in a designated area of city administration." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 167 (5th Cir. 2010) (quoting *Webster v. City of Hous.*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc)). The policymaker must "decide the goals for a particular city function and devise the means of achieving those goals." *Id.* (quoting *Bennett v. City of Slidell*, 728 F.2d 762, 769 (5th Cir. 1984) (en banc)). Policymaking authority requires more than a showing of mere decisionmaking authority. *Bennett*, 728 F.2d at 769. "Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). While a municipality's governing body is typically its policymaker, the governing body may delegate policymaking authority by: (1) express statement or formal action; or (2) conduct or practice. *Bennett*, 728 F.2d at 769.

Plaintiff argues that Chief Brown is a policymaker because he is the highest-ranking police officer within the Duncanville Police Department command structure and, according to the Duncanville Code of Ordinances, his orders relating to the conduct of officers on the ground are not subject to review. 3rd Am. Compl. ¶¶ 44-51 (citing Duncanville Code of Ordinances §§ 15-5, 15-7). The City, on the other hand, contends that Plaintiff's allegations are conclusory and Chief Brown is, at most, a decisionmaker and not a policymaker. *See* Mot. to Dismiss 7-8. In support, the City points to the Duncanville Charter and Code of Ordinances. *See id.* 6; *see also* ECF No.

5

38-1 at 2 (Duncanville Charter § 2.06) ("Except as otherwise provided by this Charter, all powers of the City and the determination of all matters of policy shall be vested in the Council."); *id.* at 6 (Duncanville Code of Ordinances § 15-4) ("The chief of police . . . shall operate directly under the city manager.").

The fact that Chief Brown's on-the-ground orders are not reviewable, if in fact true, is not by itself sufficient to demonstrate that he is a policymaker. The Fifth Circuit has stated that neither complete discretionary authority nor the unreviewability of such authority automatically results in municipal liability—there must be more. *Zarnow*, 614 F.3d at 168 (citing *Bolton v. City of Dall.*, 541 F.3d 545, 551 (5th Cir. 2008)). For example, in *Zarnow*, the plaintiff alleged that the Wichita Falls chief of police was a policymaker. *Id.* at 167. In support, the plaintiff produced several "General Orders" issued by the chief of police that addressed department policies. *Id.* Each General Order began with the language "it is the policy of this department" and proceeded to "set out regulations addressing specific behaviors." *Id.* The Fifth Circuit found that the General Orders promulgated by the police chief sufficed to be the "more" that is needed to prove policymaking authority. *Id.* at 168.

In contrast, Plaintiff's factual allegations do not show how Chief Brown's authority to make on-the-ground decisions demonstrates "final authority to establish municipal policy with respect to the action ordered." *Pembaur*, 475 U.S. at 481. Rather, the Duncanville Charter makes clear that "all" policymaking authority is vested in the city council. ECF No. 38-1 at 2 (Duncanville Charter § 2.06). Plaintiff has not alleged facts to support the "more" that is required to prove policymaking authority. *See Arevalo v. City of Farmers Branch*, No. 3:16-CV-1540-D, 2017 WL 5569841, at *6 (N.D. Tex. Nov. 20, 2017) (finding plaintiff failed to plausibly plead that police chief was a final policymaker by relying on conclusory assertions); *Doe v. City of*

*Springtown*, No. 4:19-CV-0166-P, 2020 WL 1861682, at *3 (N.D. Tex. Apr. 14, 2020) (rejecting plaintiff's assertion that Texas police chiefs are policymakers as a matter of law and finding that plaintiff failed to plead sufficient facts to demonstrate that police chief was a policymaker). Therefore, the Court finds that Plaintiff has not alleged sufficient facts to meet the "policymaker" element.

### B. *Official Policy or Custom and Moving Force*

An "official policy or custom" may take multiple forms. *See Zarnow*, 614 F.3d at 168. An official policy is most clearly established through a policy statement formally announced by an official policymaker. *See id.* When an "official policy" is not explicit, however, a persistent and widespread practice by city officials that is so common and well settled as to constitute a "custom" will suffice. *See id.* at 168-69. In addition, a single decision by a policymaker may, in rare circumstances, constitute a policy. *Id.* at 169; *Howell v. Town of Ball*, 827 F.3d 515, 527 (5th Cir. 2016).

Plaintiff does not allege a formal policy statement or a persistent and widespread practice. Instead, he argues that despite the availability of certified mental health peace officers, a crisis intervention team, non-lethal tools, and widely known literature that de-escalation techniques are necessary for the proper handling of individuals with mental health issues, Chief Brown chose not to use these resources and instead ordered officers into Plaintiff's home with live ammunition. 3rd Am. Compl. ¶¶ 62-70. Because Plaintiff claims that the City should be held liable based on Chief Brown's decisions, Plaintiff asserts a theory of § 1983 municipal liability based on a single incident.

To establish a policy under the "single incident exception," Plaintiff must show that Chief Brown has final policymaking authority and that his decisions or orders were the "moving force" behind the constitutional injury. *Valle v. City of Hous.*, 613 F.3d 536, 543 (5th Cir. 2010). To

meet the moving force element, Plaintiff must demonstrate that the policy (in this case, Chief Brown's decisions) was unconstitutional or was adopted with deliberate indifference to the known or obvious fact that such constitutional violations would result. *See Webb v. Town of Saint Joseph*, 925 F.3d 209, 219 (5th Cir. 2019). Plaintiff does not allege that Chief Brown's decisions were unconstitutional. Rather, he claims that Chief Brown's decisions exhibited a deliberate indifference to Plaintiff's constitutional rights. *Id.* ¶ 69. To base deliberate indifference from a single incident, "it should have been apparent to the policymaker that a constitutional violation was the highly predictable consequence of a particular policy." *Burge v. St. Tammany Par.*, 336 F.3d 363, 373 (5th Cir. 2003).

Even if Plaintiff had demonstrated that Chief Brown is a policymaker, Plaintiff has not alleged sufficient facts to show deliberate indifference. First, Plaintiff's allegation that Chief Brown refused to utilize mental health professionals or non-lethal tools is conclusory and lacks a factual foundation. According to Plaintiff, Chief Brown told Plaintiff's mother that a negotiating team would be sent to the scene. 3rd Am. Compl. ¶ 21. This undercuts Plaintiff's allegation that Chief Brown "refused" to utilize non-lethal options. *See Mora v. Univ. of Tex. Sw. Med. Ctr.*, 469 F. App'x 295, 299 (5th Cir. 2012) (noting that when claims are "contradicted by the other facts alleged in the complaint," it can make "the claim implausible on its face"). Second, Plaintiff merely concludes that Chief Brown's orders evinced a deliberate indifference and cites to literature pertaining to the importance of approaching a mentally-ill suspect in a non-confrontational manner. *Id.* ¶¶ 33, 69. But deliberate indifference goes beyond the standards for negligence or gross negligence. *See Blanchard-Daigle v. Geers*, 802 F. App'x 113, 116 (5th Cir. 2020). Thus, the Court finds that Plaintiff has failed to demonstrate that Chief Brown's decisions constitute the

type of "extreme circumstance" in which a single act is sufficient to impose municipal liability. *See id.* at 117.

## IV.    CONCLUSION

Accepting well-pleaded facts as true and construing the Third Amended Complaint in the light most favorable to Plaintiff, the Court does not identify any additional facts that marshal the allegations in the complaint into the realm of plausibility required by *Twombly* and *Iqbal*. Accordingly, the Court **GRANTS** Defendant's Third Motion & Brief to Dismiss [ECF No. 38].

Ordinarily, a court should not dismiss a claim that fails to meet the pleading requirements "without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after repeated opportunitities to do so." *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000). Even if Plaintiff sought leave to amend, which he has not, he has already amended his complaint three times, with the benefit of two motions to dismiss and this Court's previous Memorandum Opinion and Order [ECF No. 36]. The allegations against the City in the Third Amended Complaint do not differ significantly from those in the Second Amended Complaint. It follows that the Third Amended Complaint should reflect Plaintiff's best efforts to state a claim against the City. And since the Third Amended Complaint still does not allege enough facts, granting leave for further amendment is futile. Plaintiff's Third Amended Complaint is therefore **DISMISSED WITH PREJUDICE**.

**SO ORDERED.**

SIGNED January 21, 2022.

**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**

9